Present:  All the Justices

JUNE S. ZINK, INDIVIDUALLY AND
AS ADMINISTRATOR OF THE
ESTATE OF THOMAS J. STAFFORD,ET AL.

                              OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 980283                    January 8, 1999

THOMAS L. STAFFORD


                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                        John F. Daffron, Jr., Judge

     In this chancery suit, we consider whether four promissory
notes are estate assets or whether the notes passed to the
decedent's daughter, individually, by right of survivorship.

     Thomas J. Stafford, a widower, died intestate in 1984,
survived by his only children, a son, appellee Thomas L.
Stafford, and a daughter, appellant June S. Zink.  In 1985, the
daughter qualified as administrator of the decedent's estate.

     In 1988, the son filed a bill of complaint, later amended,
against the daughter individually and in her representative
capacity, and Continental Insurance Company, surety on the
administrator's bond.  The son alleged, inter alia, that four
promissory notes were estate assets rather than assets that
passed to the daughter individually by right of survivorship, as
she claimed.

     The cause was referred to a commissioner in chancery, who
reported to the court in 1992.  In a 1994 order, after argument

of counsel, the chancellor remanded the cause to the commissioner in chancery, who was directed to report, inter alia, "Whether the . . . promissory notes referred to in paragraph 5 of the Amended Bill of Complaint are assets of the Estate of Thomas J. Stafford or whether they passed to his daughter, June S. Zink, by right of survivorship or otherwise."

The commissioner held two additional hearings and reported to the court in 1996 that the four promissory notes were not estate assets but "became the property of" the daughter by right of survivorship. The son excepted to the commissioner's finding on this issue.

After further argument of counsel, the chancellor, in a written opinion, sustained the son's exception, ruling that the four promissory notes "are assets of the estate." This ruling was incorporated in a November 1997 judgment order, from which we awarded the daughter this appeal.

At the time of his death, the decedent resided in Chesterfield County, where he had been engaged in farming, and in the development of a residential subdivision upon a parcel of land that he owned. Prior to his death, he built four houses in the subdivision, each on an individual subdivided lot. He sold each of the lots with improvements and in each instance took back a purchase money note secured by a deed of trust from the purchaser for part of the purchase price.

2

These notes have been referred to throughout this prolonged litigation as the "Higgerson note," the "Wood note," the "Brockwell note," and the "Ross note," so called because the names referred to the makers of the notes and the purchasers of the real estate. The Higgerson note originally was payable to the decedent's order and subsequently endorsed by him on the note, "Pay to the order of Thomas J. Stafford or June S. Zink, or the survivor." The payee on the other three notes in each instance was "Thomas J. Stafford and June S. Zink, or the survivor."

Proceeds from the notes were deposited into a "collection account" at a local bank. The account was maintained in the names of "Thomas J. Stafford and June S. Zink as joint tenants with right of survivorship." During the several years before his death, the decedent's health failed, he "couldn't write checks on his own," and he was legally blind. Funds from the account were used for the decedent's maintenance or otherwise spent as he directed.

On appeal, the daughter says, "The sole question in the case is whether the Court below was correct in its ruling that the four promissory notes were assets of the decedent's estate, or whether they passed by right of survivorship to the surviving joint tenant."

The daughter focuses her argument on the provisions of Code §§ 55-20 and -21, and upon this Court's decision in Pitts v. United States, 242 Va. 254, 408 S.E.2d 901 (1991). Section § 55-21 creates an exception to § 55-20 (which abolished the common law right of survivorship between joint tenants) "when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others." See Buck v. Jordan, 256 Va. 535, 542, ___ S.E.2d ___, ___ (1998). In Pitts, interpreting those statutes, we found "that they were intended to apply to joint tenancies and to tenancies by the entireties created by an 'instrument' of conveyance or devise." Pitts, 242 Va. at 260, 408 S.E.2d at 904. We said that the promissory notes in issue there were "not such instruments." Id.

The daughter argues that the trial court misread Pitts when it held that Pitts required a holding that the notes in question here were not instruments of conveyance or devise and, thus, did not qualify for the § 55-21 exception. She contends that the Wood, Brockwell and Ross notes, "in their original form, were the instruments that created the joint form of ownership. They were therefore instruments of conveyance." Continuing, the daughter argues, "The Higgerson note could not, in its original form, be regarded as an instrument of conveyance." She says, "That note, like the notes in Pitts, was a memorial of a chose

4

in action, meaning the right of Thomas J. Stafford to the fund represented by the note. However, Mr. Stafford's endorsement of the Higgerson note so as to make it payable 'to the order of Thomas J. Stafford or June S. Zink, or the survivor' made the note, as indorsed, an instrument of conveyance" under § 55-21.

In response, the son observes the daughter's appeal is based solely on the argument the trial court erred in ruling that a survivorship interest cannot be created by a promissory note because it is not an instrument of conveyance or devise as required by § 55-21. He argues that the daughter, however, fails to consider another ruling by the trial court that renders her argument moot. He says she incorrectly assumes a critical fact, which is that she held a joint tenancy in the notes with the decedent before his death. To the contrary, the son points out, the chancellor found that the daughter failed to prove the father made a valid gift of the note proceeds to her during his lifetime. Thus, the son argues, the broader question whether these notes create a survivorship interest is immaterial, because the notes did not vest any interest in the daughter during the decedent's lifetime. Before a survivorship interest in the daughter could have been created, the son contends, the father must have created a joint tenancy between himself and the daughter during his lifetime by conveying or giving her an interest in the notes that vested at the time of the gift.

Without such a conveyance or gift, the son argues, a joint tenancy did not exist from which to create survivorship. We agree with the son.

At common law, survivorship was an incident of joint tenancy. Allen v. Parkey, 154 Va. 739, 744, 149 S.E. 615, 617 (1929). A survivorship interest can only be created between joint tenants. See Camp v. Camp, 220 Va. 595, 599, 260 S.E.2d 243, 246 (1979).

In the present case, because the daughter did not purchase an interest in any of the notes, the only manner in which she could have become a joint tenant with her father was for him to have made a gift to her of an interest in the notes before his death. To determine whether the decedent made a valid gift inter vivos, the trier of fact must look beyond the declarations on the instrument in question and consider the surrounding facts and circumstances.

In Swan v. Swan, 136 Va. 496, 117 S.E. 858 (1923), a donor had retitled several shares of stock to include his wife's name. This Court said that the manner in which the shares of stock were retitled was technically sufficient to transfer title. But the Court further explained that "it is quite possible and often happens, for reasons of convenience or otherwise, that stock held in the name of one person really belongs to another. In such a case the certificate, though prima facie evidence of

6

ownership in the person to whom it has been issued, possesses no such magic or sacredness as to prevent an inquiry into the facts. Sometimes the transferee is merely a nominal holder or 'dummy,' and in that event, although the transfer may be perfectly regular and complete on its fac[e], the true ownership remains in the transferor, and that fact may be shown." Id. at 519, 117 S.E. at 865.

The burden to prove a gift was on the daughter. When a donee claims title to personal property by virtue of a gift, the burden of proof rests upon the donee to show every fact and circumstance necessary to constitute a valid gift by clear and convincing evidence. Rust v. Phillips, 208 Va. 573, 578, 159 S.E.2d 628, 631 (1968).

One of the elements necessary to constitute a gift inter vivos is that title to the property must vest in the donee at the time of the gift. Taylor v. Smith, 199 Va. 871, 874, 102 S.E.2d 160, 162-63 (1958). The gift "must be absolute, irrevocable and without any reference to its taking effect at some future period." Quesenberry v. Funk, 203 Va. 619, 623, 125 S.E.2d 869, 873 (1962). If a purported gift is not to take effect until the donor's death, then there "is an abortive testamentary act and not a gift." Knight v. Mears, 156 Va. 676, 681, 159 S.E. 119, 120 (1931).

7

The evidence in the present case clearly shows that the decedent during his lifetime never divested himself of dominion and control over any portion of the promissory notes.  Although the note proceeds were deposited into the joint "collection account" from which both the father and daughter could withdraw funds, she never deposited any of her own funds into the account during his lifetime.  She admitted that during his lifetime she was on the account solely as a convenience to her father, and agreed in testimony that he was not making a gift of those proceeds to her during his lifetime.  For example, when asked, "And you didn't consider one-half of those accounts yours while your father was alive?", she responded, "No, sir, I did not." Moreover, the daughter admitted she could not spend during his lifetime any monies in the account without his prior approval. Also, the evidence showed the interest earned on the account was reported as income on the father's tax returns and none of it was reported on her income tax returns.

Thus, the survivorship language on each note was an abortive testamentary act and not a gift.  See Quesenberry, supra, 203 Va. at 623-24, 125 S.E.2d at 873 (gift in praesenti of interest in joint bank account naming father and daughter not shown when daughter considered the money belonged to father during his lifetime); Wrenn v. Daniels, 200 Va. 419, 430, 106 S.E.2d 126, 133 (1958) (parol evidence showed decedent had not

made valid gift inter vivos of interest in shares of stock and bank account titled jointly in name of decedent and his son).

In sum, because there was no valid gift to the daughter of any portion of the notes, she did not hold title with her father as a joint tenant.  Thus, without the prerequisite of a joint tenancy, survivorship could not be created.[*]

Consequently, we hold that the trial court correctly determined that the promissory notes and their proceeds were estate assets and did not pass to the daughter individually. Hence, the judgment below will be

Affirmed.

---

[*]In applying the law of gifts inter vivos to determine whether the daughter had an ownership interest in the notes as a joint tenant, we observe the present case is distinguishable from cases like Buck, supra, which applied contract principles when construing language in signature cards or account agreements to determine whether a surviving joint tenant acquired title to all the proceeds in a bank account.  In Buck, the parties did not contest that the surviving joint tenant had an ownership interest in the investment account.