## Richmond

ERNEST B. RUSSELL, JR. v. EVELYN B. RUSSELL.

December 1, 1975.

Record No. 741118.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Harry J. Hicks,* for appellant.

*Edward W. Wolcott (William A. Wheary, III; Wolcott, Spencer & Rivers, P.C.,* on brief), for appellee.

HARRISON, J., delivered the opinion of the court.

We decide here that the lower court did not abuse its discretion when, on July 26, 1974, it ordered Ernest B. Russell, Jr. to continue to pay his former wife, Evelyn B. Russell, the sum of $200 a week for alimony and support. On March 6, 1973, the wife was granted an absolute divorce from her husband on the ground of adultery. In the final decree the husband was directed to pay the sum of $200 a

week to the wife as alimony and support until further order of the court.

On September 15, 1973, husband and wife entered into an agreement by which they settled their respective real and personal property rights and other matters in controversy. The husband agreed to continue to pay wife the alimony ordered paid to her by the court until such order was changed or modified.

Thereafter the appellant filed his petition for a reduction in alimony. He alleged that the appellee was the owner of rental property which he had conveyed to her and that she no longer needed the sum of $200 per week as alimony. He further complained that appellee had failed to obtain employment notwithstanding her qualifications, and that he was financially unable to make the weekly payments ordered by the court. On November 23, 1973, the matter was referred to the Commissioner in Chancery, who, after conducting extensive hearings, recommended that the wife's alimony payments be reduced to $175 per week. Both parties excepted to the report. The trial court decided that appellant had the ability to pay, and appellee had the need to receive, the sum of $200 per week as alimony and support. It accordingly entered an order directing appellant to continue the weekly payments of $200 to appellee. We granted appellant an appeal from this order.

■ During the pendency of the divorce case Russell was at one time in arrears in the payment of alimony in the approximate amount of $14,000. As a result the court, following the rule in *Gloth* v. *Gloth*, 154 Va. 511, 153 S.E. 879 (1930), refused to permit appellant to present evidence he desired to introduce in his defense. He argues that the rule of *Gloth* should be reconsidered by us in this case. We decline, for the sole issue before us on this appeal is the action of the lower court in refusing to reduce appellant's alimony payments. The record shows that in support of his motion for a reduction, appellant was given full opportunity to introduce evidence before the Commissioner in Chancery as to his ability to pay, and as to the needs of appellee.

■ The Commissioner's first report, recommending that the parties be divorced, reflects that at the time of their separation they owned real estate valued at $187,500, and that they were co-owners of the Hampton Roads Plastering Company, Inc. This was obviously a very profitable business which each week paid appellant a salary of $250 and his wife a salary of $150. The company had a gross in-

come in 1971 of $553,769.18 and showed a gross profit of $74,461.

Following the trial court's entry of an order for the wife's temporary support, appellant discharged appellee as the bookkeeper of the company and employed Sarah West (whom he subsequently married) at $200 per week. The husband is alleged to have made numerous transfers of the assets of the corporation during the pendency of the divorce suit, resulting in the Hampton Roads Plastering Company being placed in receivership, and the remaining assets being distributed between appellant and appellee.

Thereafter, upon the advice of appellant, a new corporation was formed, named "Sa-Bill Construction Company", which engages in the same business as Russell's former company and operates with essentially the same employees. Appellant claims that this new corporation is owned by his mother, brother, wife and other members of his family and that he is employed only as a consultant at a salary of $150 per week. The salary of Sarah West was increased to $380 a week. Several purchases of real and personal properties were made by appellant and Mrs. West (now Mrs. Russell) involving substantial sums of money. The evidence also shows that Sa-Bill Construction Company has paid certain personal bills of appellant. Appellee alleges that the average annual income of appellant and his present wife is approximately $70,800, and that the Sa-Bill Company is enjoying the same success that the Hampton Roads Plastering Company formerly enjoyed. She says the new company deposited in its corporate account during the four month period of August through November, 1973, a total of $165,181.

Appellant's principal complaint is that the appellee is fully capable of earning a sufficient salary to support herself and that there is no reason why she should not obtain employment in a business similar to the Hampton Roads Plastering Company. He further points to the transfer of real and personal property which he made to her in their settlement agreement, and to her ownership of an apartment complex which he says has a gross rental in excess of $14,000 a year. He notes that the apartments are unencumbered and fully paid for; that the residence which she now owns and occupies is also free of liens and has a fair rental value of $300 a month; that there are no liens on her automobile; and that appellee maintains a checking account with an average monthly balance of $800 to $900.

Appellee alleges that to maintain a standard of living commensurate with that to which she was accustomed and which she enjoyed previous to the divorce requires a monthly expenditure in excess of

$1,000, and that the alimony awarded by the court is a necessary supplement to the net income she receives from her properties.

In his second report the Commissioner found:

"It is clear from all the evidence and exhibits that the Defendant is attempting to hide behind a thinly veiled corporation, and that he has the ability to earn as much if not more than he had at the time of the previous report. The real estate settlements, however, have made significant differences in the needs and incomes of both parties. In view of this your Commissioner recommends that the Defendant pay unto the Complainant, Evelyn Ballance Russell, reduced alimony payments of $175.00 per week retroactive to December 14, 1973 as heretofore indicated by the Court. Said alimony payments of $175.00 per week shall continue until further Order of this Court."

While the evidence supports both the findings of the Commissioner and his recommendation that the alimony payments be reduced, we cannot say that the trial court abused its discretion in not following the Commissioner's recommendation. Although the allowance to appellee is large, it is not excessive when we consider the assets of the parties, their standards of living and their abilities to earn.

We again follow the general rule that a trial court has a very broad discretion in fixing the amount of alimony and that we will not interfere with such discretion unless it was arbitrarily used or some injustice has been done. *See Gagliano* v. *Gagliano,* 215 Va. 447, 211 S. E. 2d 62 (1975); *Ring* v. *Ring,* 185 Va. 269, 38 S. E. 2d 471 (1946).

*Affirmed.*